<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| OSCAR G. ROBINSON, : | Civil No. 11-4191 (FSH) |
| Plaintiff, : | |
| : | <u>OPINION</u> |
| v. : | |
| TERRANCE SHEFFIELD, et al., : | |
| Defendants. : | |

**APPEARANCES:**

    OSCAR G. ROBINSON, #366348B, Plaintiff Pro Se
    South Woods State Prison
    215 S. Burlington Rd.
    Bridgeton, NJ 08302

**HOCHBERG, District Judge**:

    Plaintiff, Oscar G. Robinson, a state sentenced inmate incarcerated at Morris County Correctional Facility, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C. § 1915, asserting violation of his rights under 42 U.S.C. §1983, against East Orange Police Officers Mendoza and Thom, private security guard Terrance Sheffield, and others.  This Court will grant Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u>.  <u>See</u> 28 U.S.C. § 1915(b).  Having reviewed Plaintiff's allegations, as required by 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, this Court will dismiss the Complaint.

**I.  BACKGROUND**

    Oscar G. Robinson brings this Complaint against East Orange Police Officers Milton Mendoza and Samuel Thom, the City of East Orange (and its police department), Terrance

Sheffield (private security guard employed by Security Enforcement Bureau), Security Enforcement Bureau, Walgreens, Inc., and various John Does, alleging violation of his constitutional rights under 42 U.S.C. § 1983.  The statement of facts in the Complaint consists of the following:

> 1. On August 9, 2009, Plaintiff was shopping in the Walgreens Store, located at 508 Main Street, East Orange, New Jersey.
>
> 2.  At this time, Robinson was approached and asked to show his identification by Defendant, Sheffield in connection with the use of a credit card.
>
> 3.  Robinson had told Sheffield his identification was in his car and walked out of the store to his car as Sheffield followed.
>
> 4.  As Robinson attempted to retrieve identification from the glove compartment of his car he was approached by Defendants Sheffield, Mendoza and Thom.
>
> [5].  Fearing for his safety, Robinson locked the car and backed straight out of the parking place it had been in.
>
> [6].  At no time did his vehicle strike or come close to striking any of the individual Defendants, Sheffield, Mendoza or Thom.
>
> [7].  At no time did Robinson possess, brandish or reveal any weapon, or make any threatening motions, gestures, statements or actions towards the individual Defendants Sheffield, Mendoza and Thom.  At no time pertinent hereto was he arrested or placed in custody.  Being unarmed, plaintiff at no time presented a threat of death or grievous bodily harm to the individual Defendants.
>
> [8].  Despite the fact that none of the three individual Defendants were in any danger, or in any reasonable fear of injury, Sheffield drew his weapon and fired at Robinson intending to kill him.
>
> [9].  At the time Sheffield shot at Robinson, he was at least ten (10) feet away from Robinson, and Robinson was driving the vehicle he was lawfully in away from Sheffield, Mendoza and Thom.
>
> 1[0].  As Robinson left the vicinity of the three individual Defendants, he heard and saw Officers Mendoza and Thom prevent Sheffield from firing more shots at

Case 2:11-cv-04191-JLL-JAD   Document 2   Filed 03/13/12   Page 3 of 11 PageID: 43

> Robinson and saw them inform Sheffield that his actions were illegal and unlawful.
>
> 1[1].  Neither Officer Mendoza or Officer Thom pulled his weapon and neither Officer feared that they were in any way physically threatened by Robinson operating his motor-vehicle to leave the Walgreens parking lot.
>
> 1[2].  At all times relevant to this action and upon information and belief, Sheffield did not possess a valid permit to carry the weapon he used to try and kill, maim and injure Robinson.
>
> 1[3].  Officers Mendoza and Thom in fact told [] Sheffield that his conduct in firing his illegal firearm was unlawful and negligent and told him to cease and desist firing.
>
> 1[4].  As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff has suffered pain, mental cruelty, emotional distress and has been forced to incur legal and other expenses.

(Dkt. 1 at 10-11.)

Plaintiff further asserts that Mendoza and Thom "had a duty to exclude defendant Sheffield from any involvement with respect to Plaintiff, Robinson on the night in question" and they "failed to exclude Sheffield from participating in their Police activities and caused and/or facilitated defendant Sheffield pulling his weapon and firing it at plaintiff Robinson thereby endangering his life."  (Dkt. 1 at 20.)  He contends that the City of East Orange "had an obligation to train and supervise Officers Mendoza and Thom to prevent them from permitting Defendant, Sheffield to assist them in their police investigation on August 9, 2009 and in permitting him to aim, pull and discharge his firearm at Plaintiff, Robinson on that date."  Id. at 21.  Plaintiff asserts that the police defendants "failed to arrest defendant Sheffield for carrying and discharging a firearm for which he did not possess a valid permit to carry, said failure also being intended to imbue Sheffield acts with the color of lawfulness" and that all defendants

3

"conspired to destroy or misplace the security video record of the events of August 9, 2009." Id. at 22. Plaintiff asserts that defendants violated his constitutional rights under 42 U.S.C. § 1983, as well as New Jersey law. For relief, Plaintiff seeks damages, legal fees, and all other relief as the Court sees fit. (Dkt. 1.)

## II. STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner is seeking redress against a government employee or entity, and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[1] which was previously applied to determine if a federal complaint stated a claim. See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). To survive dismissal under Iqbal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[1] The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.

misconduct alleged.' " Iqbal, 129 S. Ct. at 1949 (citation omitted).  Officials may not be held liable under § 1983 for the unconstitutional misconduct of their subordinates.  Id. at 1948-49.  Rather, the facts set forth in the complaint must show that each government-official defendant, through the official's own individual actions, has violated the plaintiff's constitutional rights.  Id.  This Court must disregard labels, conclusions, legal arguments, and naked assertions.  Id. at 1949.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief", and will be dismissed.  Id. (citations and internal quotation marks omitted).

     The Third Circuit instructs that, to determine the sufficiency of a complaint under the pleading regime established by Iqbal,

> a court must take three steps:  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947.  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950.  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Township, 629 F. 3d 121, 130 (3d Cir. 2010); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) ("a complaint must do *more than allege the plaintiff's entitlement to relief*.  A complaint has to "show" such an entitlement with its facts") (emphasis supplied).  The Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).

### III.  DISCUSSION

A court's initial task is to "tak[e] note of the elements [Plaintiff] must plead" in order to state a claim of liability under 42 U.S.C. § 1983.  See Iqbal, 129 S Ct. at 1947-48.  Section 1983 of Title 28 of the United States Code provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

A.  Fourth Amendment Excessive Force

A claim of "excessive force in the course of making [a] . . . 'seizure' of [the] person . . .[is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Scott v. Harris, 550 U.S. 372, 381 (2007) (quoting Graham v. Connor, 490 U.S. 386, 388 (1989)).  "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." Curley v. Klem, 499 F.3d 199, 203 n.4 (3d Cir. 2007 (quoting Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999) (quotation marks omitted).  A court must evaluate the reasonableness of "a particular user of force . . . from the perspective of a reasonable officer on the scene, rather than

with the 20/20 vision of hindsight." Graham. 490 U.S. at 396.  In deciding whether the challenged seizure constitutes excessive force, a court must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Couden v. Duffy, 446 F. 3d 483, 496-97 (3d Cir. 2006) (quoting Graham, 490 U.S. at 396)).  The Third Circuit has set forth additional considerations, such as "the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time. Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).  "Culpability *is* relevant . . . to the *reasonableness* of the seizure - to whether preventing possible harm to the innocent justifies exposing to possible harm the person threatening them." Scott, 550 U.S. at 384 n.10.[2]

Here, the facts asserted in the Complaint show that the conduct of the police officer defendants - Mendoza and Thom - was reasonable.  Plaintiff alleges that Mendoza and Thom did not use any force whatsoever,[3] and that as soon as Sheffield acted by shooting one bullet into Plaintiff's departing vehicle,[4] Mendoza and Thom immediately stopped and prevented Sheffield

---

[2] In Scott v. Harris, the Supreme Court ruled that "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." Scott v. Harris, 550 S. Ct. at 386.

[3] "Neither Officer Mendoza or Officer Thom pulled his weapon . . ." (Dkt. 1 at 11.)

[4] The Complaint does not support an inference that either Mendoza or Thom knew in advance that Sheffield was going to discharge his weapon or that they authorized him to discharge his weapon.

7

from discharging his weapon again.[5] Plaintiff even asserts that "Mendoza and Thom in fact told [] Sheffield that his conduct in firing his illegal firearm was unlawful and negligent and told him to cease and desist firing." (Dkt. 1 at 11.)

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. 662, __, 129 S.Ct. 1937, 1948 (2009). Because the facts alleged in the Complaint unequivocally show that neither Mendoza nor Thom used excessive force, authorized or encouraged Sheffield to discharge his weapon, or otherwise acted unreasonably, the Complaint fails to state a claim against Mendoza or Thom under 42 U.S.C. § 1983.

Assuming without deciding that Sheffield's discharge of his weapon was excessive force,[6] this Court will nevertheless dismiss the § 1983 excessive force claim against Sheffield and his employers Walgreens and Security Enforcement Bureau because Sheffield was not acting under color of state law when he shot at Plaintiff's vehicle. "[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful." American Manufacturers Mutual Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quoting Shelley v. Kraemer, 334 U.S. 1, 13 (1948)). State action exists where the conduct allegedly causing the deprivation of a federal right is "fairly attributable to the State." Lugar v.

---

[5] "Robinson . . . heard and saw Officers Mendoza and Thom prevent Sheffield from firing more shots at Robinson . . ." (Dkt. 1 at 11.)

[6] "It is unreasonable for an officer to use deadly force against a suspect unless the officer has good reason 'to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" Lamont v. New Jersey, 637 F.3d 177, 183) (quoting Tennessee v. Garner, 471 U.S. 1, 3 (1985)).

Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982).  Determining state action involves a two-step approach.

> [T]he first question is whether the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority.  The second question is whether, under the facts of this case, respondents, who are private parties, may be appropriately characterized as "state actors."

Lugar, 457 U.S. at 939; see also Sullivan, 526 U.S. at 50.  "Before private persons can be considered state actors for purposes of section 1983, the state must significantly contribute to the constitutional deprivation . . ." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1266 (3d Cir. 1994).  A private person may fairly be said to be a state actor "when (1) he is a state official, (2) he has acted together with or has obtained significant aid from state officials, or (3) his conduct is, by its nature, chargeable to the state."  Angelico v. Lehigh Valley Hospital, Inc., 184 F.3d 268, 277 (3d Cir. 1999).

In this case, although Plaintiff's Complaint states that Mendoza and Thom "failed to exclude Sheffield from participating in their Police activities and caused and/or facilitated defendant Sheffield pulling his weapon and firing it at plaintiff Robinson thereby endangering his life," (Dkt. 1 at 20), this Court must disregard these conclusory allegations because they are contrary to the facts alleged in the Complaint, which clearly show that neither of the police officers facilitated, aided, or encouraged Sheffield's use of his weapon.  Because the facts alleged in the Complaint fail to support an inference that Sheffield's use of force is in any way attributable to Mendoza, Thompson, or the City of East Orange, Sheffield was not acting under color of state law when he allegedly discharged his weapon.  The Complaint fails to state a

9

Fourth Amendment excessive force claim against Sheffield or his employers - Security Enforcement Bureau and Walgreens - under § 1983.

Plaintiff also sues the City of East Orange (and its police department) for violation of his constitutional rights under § 1983.  "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or act may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Monell, 436 U.S. at 694.  Moreover, "a single incident of police misbehavior by a single policeman is insufficient as *sole* support for an inference that a municipal policy or custom caused the incident."  Brown v. City of Pittsburgh, 586 F. 3d 263, 292 (3d Cir. 2009) (quoting City of Oklahoma City v. Tuttle, 471 U.S. 808, 832 (1985) (Brennan, J., concurring).

Here, Plaintiff alleges no facts supporting an inference that a policy or custom of the City of East Orange or its police department caused Sheffield to allegedly discharge his weapon.  Under these circumstances, the § 1983 claims against the City of East Orange and its police department will be dismissed for failure to state a claim.[7]

B.  Failure to Arrest or Prosecute Sheffield

To the extent that Plaintiff seeks to assert a claim based on the failure of East Orange officials to arrest or prosecute Sheffield, the claim is without merit.  "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  Leeke v. Timmerman, 454 U.S. 83, 86 (1981) (quoting Linda R.S. v. Richard D., 410 U.S. 614, 619

---

[7] This Court will not permit Plaintiff to file an amended complaint as nothing indicates that he could state a § 1983 claim regarding this incident through an amendment.  Amendment would therefore be futile.

(1973)); see also Maine v. Taylor, 477 U.S. 131, 137 (1986); Heckler v. Chaney, 470 U.S. 821, 832 (1985).

C.  Claims Arising Under New Jersey Law

The Court declines to exercise supplemental jurisdiction over claims arising under New Jersey law because all federal claims over which the Court has original jurisdiction are being dismissed.  28 U.S.C. § 1367(c)(3); Growth Horizons, Inc. v. Delaware County, Pennsylvania, 383 F.2d 1277, 1284-5 (3d Cir. 1993).

## IV.  CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's application to proceed in forma pauperis, dismisses the federal claims asserted in the Complaint, and declines to exercise supplemental jurisdiction.

s/ Faith S. Hochberg
**FAITH S. HOCHBERG, U.S.D.J.**

Dated:  March 13, 2012